**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Antonio Aguilera, ) | No. CV 05-3377-PCT-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Golden Eagle Distributors, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Jose Antonio Aguilera claims that his former employer, Defendant Golden Eagle Distributors, Inc. ("Golden Eagle"), discriminated against him on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964. Aguilera admits that he lied to his supervisor and broke a company rule. He argues, however, that Golden Eagle would have given him a second chance instead of immediately terminating him if he was not Mexican-American. Golden Eagle has moved for summary judgment. Because Aguilera has failed to present evidence from which a jury could reasonably conclude that Golden Eagle acted with discriminatory intent when it fired him, the Court will grant Golden Eagle's motion.

**I.     Background**

Aguilera is a Mexican-American. He worked at Golden Eagle's Holbrook, Arizona facility for twenty-seven years. At the time Golden Eagle fired him, Aguilera was one of the company's bulk delivery drivers. On Mondays, Aguilera delivered Budweiser beer to several

Golden Eagle customers in Winslow, Arizona. The Winslow Wal-Mart was not one of these customers.

On Monday, May 23, 2005, Aguilera was seen behind the Winslow Wal-Mart transferring twenty-five to thirty cases of Budweiser beer from his delivery truck to a white pickup truck. After Golden Eagle learned of the incident, Aguilera's supervisor, Dale Klein, asked him why his delivery truck had been parked behind Wal-Mart. Aguilera told Klein that he was at Wal-Mart buying a belt. Later, Aguilera admitted to transferring the beer and claimed that he was doing a favor for a friend and did not steal anything. An inventory revealed that Aguilera had not stolen the beer from the Holbrook warehouse, but Golden Eagle continued to suspect Aguilera of stealing the beer from its customers. Following a subsequent investigation, Golden Eagle terminated Aguilera for the stated reasons of dishonesty and suspicion of theft.

## II.   Legal Standard

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is appropriate when no "genuine issue" of "material fact" remains and "the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   Discussion

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To prevail on a Title VII claim, the plaintiff must prove that an adverse employment action was taken "because of" unlawful discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002). Title VII disparate-treatment claims, like Aguilera's, "require the plaintiff to prove that the employer acted with conscious intent to discriminate." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-06 (1973). The plaintiff can show discriminatory intent

by proceeding under the *McDonnell Douglas* framework or by presenting other sufficient evidence of intent. *Costa*, 299 F.3d 855. In this case, Aguilera proceeds under the burden-shifting analysis set forth in *McDonnell Douglas*.

Under *McDonnell Douglas*,

> the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004). Assuming for the sake of argument that Aguilera has established a prima-facie case of national-origin discrimination,[1] Golden Eagle has clearly articulated legitimate, nondiscriminatory reasons for Aguilera's termination: dishonesty and suspicion of theft. Aguilera concedes as much [Plaintiff's Response at 14]. The burden, then, is on Aguilera to present evidence sufficient to show that Golden Eagle's proffered reasons for the termination are a pretext for discrimination.

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez*, 349 F.3d at 641. Direct evidence of discriminatory motive creates a triable issue as to the actual motivation of the employer even if the evidence is not substantial. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). "To show pretext using circumstantial evidence," on the other hand, "a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 641.

---

[1] The Court has serious doubts about whether Aguilera's evidence even meets the "minimal" standard necessary to establish the prima-facie case under Title VII. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). But since Aguilera uses the same evidence to show pretext that he uses to establish the prima-facie case, the Court will simply assume the evidence meets the "minimal" standard and will proceed to analyze the evidence under the more demanding pretextual standard.

Aguilera contends that a certain statement made by Klein, the person Aguilera alleges made the decision to terminate him,[2] is direct evidence of discrimination. Specifically, Aguilera alleges that on several occasions Klein told him, "I think it's time for you to start looking for another job" [Defendant's Statement of Facts ("DSOF"), Ex. 1 at 100]. This statement, however, is not the kind of remark that qualifies as direct evidence of discrimination. *Cf. Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1128 (9th Cir. 2000) (holding that the statement "two chinks . . . were more than enough" is direct evidence of discrimination); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (holding that the statement "dumb Mexican" is direct evidence of discrimination). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin*, 150 F.3d at 1221 (internal quotation marks omitted) (alteration in original). Klein's statement is only discriminatory if one presumes that Klein thought Aguilera should look for another job because he is a Mexican-American. It is, therefore, not direct evidence of discrimination. To the extent the statement qualifies as circumstantial evidence of discrimination, the Court finds that it is insufficient to establish pretext.

Turning to Aguilera's circumstantial evidence (which must be specific and substantial), the Court finds that it likewise fails to demonstrate that the proffered reasons for his termination were pretextual. Aguilera's main contention is that Golden Eagle treated two similarly situated Caucasian employees more favorably than him by giving them a second chance instead of immediately terminating their employment. Although such evidence would certainly support an inference of discrimination, the employees Aguilera refers to are not "similarly situated." To be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct. *Hollins v. Atlantic*

---

[2] Whether Klein actually made the termination decision is a matter in dispute. Golden Eagle claims that Cyndy Valdez, its Hispanic vice president and general counsel, made the termination decision without any recommendation from Klein. For the purposes of this order, the Court will assume that Klein was the decisionmaker.

- 4 -

1   *Co.*, 188 F.3d 652, 659 (6th Cir. 1999) (cited with approval by *Vasquez*, 349 F.3d at 642
2   n.17).  Only one of the Caucasian employees Aguilera points to engaged in conduct
3   involving suspicion of theft, and that instance differs substantially from the circumstances
4   that gave rise to Aguilera's termination.[3]  Danny Hill, a former warehouseman at the
5   Holbrook facility, was caught drinking a couple of damaged beers from the "breakage table"[4]
6   after business hours.  However, this incident occurred several years before Klein became the
7   Holbrook branch manager.  It was Klein's predecessor who chose to discipline Hill instead
8   of firing him.  Furthermore, it cannot seriously be contended that Hill engaged in conduct of
9   "comparable seriousness" to that of Aguilera.  *Vasquez*, 349 F.3d at 641.  Unlike the two to
10  three damaged beers that Hill took, Aguilera unloaded twenty-five to thirty cases of
11  undamaged Budweiser beer — the brand of beer that Golden Eagle distributes — from his
12  delivery truck to a private vehicle parked behind a noncustomer's place of business, and then
13  lied when he was confronted about the incident.

14         Aguilera also contends that Klein's support for English-only initiatives and for efforts
15  to secure the U.S. borders, as well as his dislike for his daughter's Hispanic boyfriend,
16  demonstrate that Klein harbors a discriminatory animus toward Mexican-Americans.  To the
17  extent that Klein's political views would even be admissible, Aguilera has presented no
18  evidence that Klein's position on these issues is animated by a dislike for Mexican-
19  Americans.  On the contrary, Klein's undisputed testimony is that he wants to secure all U.S.
20  borders, not just the country's border with Mexico [Plaintiff's Statement of Facts, Ex. F at 3].
21  As for his daughter's boyfriend, Klein's undisputed deposition testimony reveals that his
22  dislike for his daughter's boyfriend stems from the fact that the boyfriend has fathered three

---

[3] The other conduct Aguilera offers for comparison involve off-the-clock activities that resulted in charges of driving under the influence and drug possession.  Although serious, such conduct is fundamentally different than on-the-clock conduct involving dishonesty and suspicion of theft.

[4] The breakage table is the designated area where broken packages or beers are set aside for returns or re-usage.

- 5 -

1 children with Klein's daughter out of wedlock yet still has not married her [DSOF, Ex. 4 at
2 84].

3 　　　　Lastly, Aguilera argues that Golden Eagle's explanation of the firing lacks credibility
4 because Aguilera did not *in fact* steal any beer from Golden Eagle or its customers.
5 However, whether Aguilera actually stole from Golden Eagle or its customers is not
6 dispositive. Instead, the issue is whether Golden Eagle "'honestly believed its reason[s] for
7 its actions, even if its reason[s are] foolish or trivial or even baseless.'" *Villiarimo v. Aloha*
8 *Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Under the circumstances presented in
9 this case, a reasonable jury would be compelled to conclude that Golden Eagle honestly
10 suspected Aguilera of stealing.[5]

11 　　　　In short, Aguilera has failed to present any direct or "substantial" circumstantial
12 evidence that casts doubt on the credibility of Golden Eagle's motives. Whatever little value
13 Aguilera's circumstantial evidence may have is diminished when the Court considers, among
14 other things, that Klein personally hired one of Aguilera's own sons (and at least one other
15 Hispanic) [DSOF, Ex. 4 at 83, 84-85], Aguilera's brother was Klein's second-in-command
16 [DSOF, Ex. 1 at 34; Ex. 4 at 80], and Aguilera worked for the company for twenty-seven
17 years prior to his termination without incident [PSOF ¶ 4].

18 **IV.   Conclusion**

19 　　　　Because Aguilera has failed to present sufficient evidence for a jury to find that
20 Golden Eagle intentionally discriminated,

21 　　　　**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 29) is
22 granted, and the Clerk of the Court shall enter judgment accordingly;

---

[5] In addition to completing the transfer of beer behind a noncustomer's place of business and lying when he was confronted about the incident, two other undisputed facts stand out: (1) Aguilera had sought and received permission to haul every other personal item he had ever hauled in the delivery truck [DSOF, Ex. 1 at 68]; and (2) when Klein asked him where he got the beer, Aguilera responded, "I don't know" [DSOF, Ex. 1 at 80].

- 6 -

1  **IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. # 48) is
2  denied as moot.
3  DATED this 4th day of October, 2007.

James A. Teilborg
United States District Judge